UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    CRIM. NO. 14-165 (MJD/JSM)

     Plaintiff,

v.                                           REPORT AND RECOMMENDATION

JAMES FRANCIS VOLIN,

     Defendant.


JANIE S. MAYERON, United States Magistrate Judge

The above matter came before the Court upon Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 24].  Robert M. Lewis, Assistant United States Attorney, appeared on behalf of the Government.  Doug Olson, Esq., appeared on behalf of defendant, who was personally present.  The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

## I.     FACTUAL BACKGROUND

Defendant James Francis Volin has been charged with 18 counts of structuring transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324. Defendant has challenged the search and seizure of physical evidence from his residence located at XXXX Bolland Trail, Inver Grove Heights, Minnesota.  At the hearing on October 7, 2014, the parties agreed that defendant's motion could be resolved based on the four corners of the search warrant and application.  See Government Ex. 1.

The facts underlying the present motion are as follows: During the course of investigation of defendant, Sergeant Mike DeJong of the Minnesota State Patrol Vehicle Crimes Unit applied for a search warrant of the residence located at XXXX Bolland Trail, Inver Grove Heights, MN, which Sgt. DeJong stated was a single family residence "owned, held for resale or otherwise in the possession of" defendant.   Government Ex. 1, p. 2.   The relevant portion of Sgt. DeJong's affidavit supporting the search warrant is as follows:

> In October of 2011, the Minnesota State Patrol Vehicle Crimes Unit was initially contacted by Gary's Auto Sales in Mankato, MN, regarding someone using their business name to sell motor vehicles.  Gary's Auto Sales of Mankato, MN, had been contacted by Minnesota Driver & Vehicle Services about citizen complaints regarding incomplete paperwork on some vehicle sales done by them.  The owner of Gary's Auto Sales in Mankato, MN, compared their records to the vehicles which had incomplete paperwork and found that they had never possessed or sold any of those vehicles.   The owner said the vehicles were titled in Woodbury, MN.

> Also in October 2011, the Woodbury Police Department forwarded a complaint to the Minnesota State Patrol Vehicle Crimes Unit regarding a person illegally selling motor vehicles from his residence in Woodbury, MN.   The complaint identified the person as JAMES FRANCIS VOLIN . . . of XXXX Eagle View Blvd. in Woodbury, MN, phone number 612-414-XXXX.   The complaint also included information that JAMES VOLIN has a Minnesota LLC with the name of Gary's Auto Sales of Woodbury, LLC, and that JAMES VOLIN was purchasing these vehicles through the Manheim Auto Auction.

> In November 2012, the Minnesota State Patrol Vehicle Crimes Unit received a complaint from a private citizen who had purchased a 2002 Mitsubishi Galant . . . on 02-07-2012 for $4087.00 from Gary's Auto Sales of Eau Claire, WI.  The complainant saw the vehicle on Craigslist and called the number of the posting, 612-414-XXXX, and met a male at a house in Woodbury who identified himself as JIM VOLIN. The complainant said VOLIN indicated that he worked for

2

Gary's Auto Sales.  The complainant wrote a personal check for the vehicle which was made out to JIM VOLIN personally. . . .

[T]he complainant went to the license center to renew the registration and get current tabs . . . [but] was told the registration could not be renewed because the title had not been transferred and no sales tax or fees were paid to transfer it. . . . The complainant provided the Vehicle Crimes Unit with copies of the vehicle purchase contract completed JIM VOLIN in the name of Gary's Auto Sales of Eau Claire, WI, and the check wrote [sic] to JIM VOLIN.  JIM VOLIN wrote his phone number on the vehicle purchase contract, 612-414-XXXX . . . signed his name and dated it 2-7-2012. The contract shows that JIM VOLIN had collected $287.00 in taxes and fees from the complainant.  Those funds were not paid to the State of Minnesota. . . .

VOLIN then . . . gave the complainant a Minnesota 21-Day permit . . . stamped with Gary's Auto Sales of Eau Claire, WI, and bore the same signature as the check endorsement and vehicle purchase contract.  When the 21-Day permit expired the complainant attempted to contact JIM VOLIN multiple times but he did not respond to the calls.  To this date, the title has not been transferred and the taxes and fees have not been paid by JIM VOLIN**.**

In December 2012 [the affiant] was assigned to this case and began [his] investigation on JAMES FRANCIS VOLIN. [The affiant] met with the two complainants who originally contacted the Woodbury Police Department about the illegal vehicle sales activity of JAMES FRANCIS VOLIN.  The complainants provided . . . a large amount of documents and information regarding vehicles which JAMES VOLIN was purchasing from auctions and then selling them mainly on Craigslist, but also on a few other on-line auction sites.  The information showed VOLIN advertising nearly 100 vehicles from August 2011 to December 2012.

[The affiant] contacted an investigator with the Wisconsin Department of Transportation . . . [and was] told that JAMES FRANCIS VOLIN does not hold a buyers representative license for Gary's Auto Sales. . . . The Wisconsin investigator told [the affiant] that Gary's Auto Sales had no vehicles displayed at the dealership and that it was presently for sale due to failure to pay taxes.

3

In February 2013, [the affiant] went to Manheim Northstar Auto Auction in Shakopee, MN . . . . The office manager told [the affiant] that JAMES VOLIN . . . [was a] listed authorized buyer[] at the auction.  The Manheim office manager said that in January 2012 JAMES VOLIN gave her an Auction Access Authorization signed by the owner of Gary's Auto Sales of Eau Claire, WI.  This authorization is not a legal authorization because JAMES VOLIN is not a licensed wholesale buyer's representative in Wisconsin, according to the Wisconsin Department of Transportation. . . .

[The affiant] reviewed the list of vehicles purchased from the Manheim Northstar Auto Auction and found the 2002 Mitsubishi Galant . . . sold to [the] complainant on 02-07-2012 by JAMES VOLIN.  This 2002 Mitsubishi was illegally purchased at the auction on 1-26-2012 for $2,950.00.

Since January of 2013, JAMES VOLIN has illegally purchased in excess of 35 vehicles at the auction and subsequently advertised and/or sold them to the general public, thus avoiding the payment of sales tax and registration fees to the State of Minnesota.  Auction records show that over 400 vehicles have been purchased by Gary's Auto Sales of Eau Claire, WI, since 2003.

Multiple administrative subpoenas were obtained from the Dakota County Attorney's Office and served on Craigslist, Sprint, T-Mobile, Comcast, Quest, Century Link and Cox Communications.  Approximately 2,000 pages of vehicle sale postings were received from Craigslist posting numbers for vehicles for sale and the multiple phone numbers used on the postings.  Craigslist posting information also includes the IP addresses for the physical location the posting was made.  JAMES FRANCIS VOLIN of XXXX Bolland Trail in Inver Grove Heights, MN . . . [was] identified by phone numbers, IP addresses and email addresses as advertising large amounts of vehicles for sale, on Craigslist . . . .

On March 7, 2013, members of the State Patrol Vehicle Crimes Unit attended the weekly Thursday Manheim Northstar Auction undercover and observed . . . JAMES FRANCIS VOLIN . . . purchase vehicles.  One vehicle purchased was a 2004 Chrysler Sebring Convertible . . . . On 03-11-2013 [the affiant] found that vehicle advertised on Craigslist with a contact phone number of 612-414-XXXX, JAMES FRANCIS VOLIN's phone number.

Government Ex. 1.

On April 2, 2013, the search warrant was issued by Dakota County District Court Judge Michael D. Wentzell.  Id.  The warrant was executed on April 3, 2013.  Id.  During the search, officers recovered computers, cell phones, financial statements, checkbooks, CDs and disks, vehicle receipts, utility bills, and Craigslist user information. Id.

On June 10, 2014, defendant filed this motion to suppress the evidence found during execution of the search warrant.  Defendant argued that the supporting affidavit lacked probable cause because it was conclusory and not based on facts, and because it failed to establish a nexus between his residence and the alleged crime.  Defendant's Post Hearing Memorandum in Support of Motion to Suppress Evidence Obtained as a Result of Search and Seizure ("Def.'s Mem."), pp. 3-5 [Docket No. 41].  In addition, defendant asserted that the good-faith exception under United States v. Leon, 468 U.S. 897 (1984), did not apply because the warrant was so facially deficient that a reasonable officer would know that the warrant lacked probable cause.  Id., pp. 5-6.

The Government opposed the motion, arguing that the affidavit accompanying the warrant clearly showed that defendant fraudulently acquired and sold automobiles, and used his Inver Grove Heights residence to advertise the vehicles on Craigslist. Memorandum of the United States in Opposition to Motion to Suppress Evidence ("Gov't Mem."), pp. 1-2 [Docket No. 42].  The Government also contended that, even if the warrant lacked probable cause, the Leon exception should apply because the warrant is logical and reasonable on its face, the defendant did not allege intentional

misrepresentation, and there is no reason to doubt the issuing judge's capabilities. Id., p. 3.

## II.     ANALYSIS

When a search is executed pursuant to a warrant, a court must determine whether the warrant is supported by probable cause. United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007) (citing Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998)). Probable cause exists "if there is a fair probability that contraband or evidence of a crime will be found in the place to be searched." United States v. Paton, 535 F.3d 829, 836 (8th Cir. 2008) (quoting United States v. Thompson, 210 F.3d 855, 860 (8th Cir. 2000)). In other words, "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) (citing United States v. Koelling. 992 F.2d 817, 823 (8th Cir. 1993)). On the other hand, "[p]robable cause does not require direct evidence linking a crime to a particular place." United States v. Anderson, 450 F.3d 294, 303 (7th Cir. 2006) (citation omitted). "[M]agistrates are 'entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense . . . .'" United States v. Caswell, 436 F.3d 894, 899 (8th Cir. 2006) (citations omitted). Accordingly, the task of a judge issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause is a 'fluid concept;'

therefore, magistrates should read affidavits with common sense and 'not in a grudging, hyper technical fashion.'" Caswell, 436 F.3d at 897 (quoting Walden, 156 F.3d at 870).

When reviewing the decision of the issuing judge, a district court must ensure that the magistrate had a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 238-39 (citation omitted); see also United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996) (citation omitted) ("Our duty as the reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed . . . ."). In doing so, a court must give "great deference to the magistrate's probable cause determination." Caswell, 436 F.3d at 897 (citing United States v. Arenal, 768 F.2d 263, 266 (8th Cir.1985)); LaMorie, 100 F.3d at 552 ("[W]e owe substantial deference to the determination of probable cause by the issuing judge."). At the same time, the Eighth Circuit has warned that "[c]onclusory statements made by affiants fail to give the issuing magistrate a substantial basis for determining that probable cause exists." United States v. Summage, 481 F.3d 1075, 1077-78 (8th Cir. 2007) (quoting Caswell, 436 F.3d at 897-98). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." Id. (quoting Gates, 462 U.S. at 239).

The Court finds that the supporting affidavit provides probable cause to search defendant's residence at XXXX Bolland Trail, Inver Grove Heights, MN. First, the affidavit sets forth the basis for determining that defendant was engaged in a scheme to buy and sell vehicles without a license and to evade payment of sales taxes on the sale of vehicles. In particular, the affidavit provided:

- In October 2011, Gary's Auto Sales of Mankato, MN, reported to the Minnesota State Patrol Vehicle Crimes Unit that it had received citizen complaints regarding incomplete paperwork on vehicle sales. Gary's Auto Sales of Mankato, MN, reported that it had never possessed or sold any of the vehicles, which were titled in Woodbury, MN.

- In October 2011, the Woodbury Police Department forwarded a complaint to the Minnesota State Patrol Vehicle Crimes Unit that defendant (phone number 612-414-XXXX)[1] was illegally selling motor vehicles from his residence in Woodbury, MN. The complainant also stated that defendant owns Gary's Auto Sales of Woodbury, LLC, and purchases his vehicles through the Manheim Auto Auction.

- In November 2012, a private citizen reported to the Minnesota State Patrol Vehicle Crimes Unit that he had seen an advertisement on Craigslist for the sale of a 2002 Mitsubishi Galant by Gary's Auto Sales of Eau Claire, WI, under the phone number 612-414-XXXX. The complainant purchased the Galant from defendant on February 7, 2012. The sales contract stated that defendant had collected $287 in taxes and fees. However, the complainant could not renew his vehicle registration on the Galant because the title had not been transferred, and no tax or fees had been paid on it. The complainant contacted defendant regarding the title transfer, and defendant gave the complainant a 21-day permit. After the permit expired, the complainant attempted to contact defendant, but defendant did not respond to the calls. As of the date of the affidavit, title to the 2002 Mitsubishi Galant had not been transferred to the complainant, and no taxes or fees had been paid by defendant.

- The office manager of Manheim Northstar Auction stated that defendant had given her an Auction Access Authorization from Gary's Auto Service of Eau Claire, WI. However, the Wisconsin Department of Transportation revealed that defendant was not an authorized vehicle buyer for Gary's Auto Sales of Eau Claire, WI. In addition, Manheim's sales records confirmed that defendant had purchased from it the 2002 Mitsubishi Galant sold to the private citizen on February 7, 2012.

---

[1]    The Court has redacted the full phone number in this decision. However, the reference to "612-414-XXXX" is to the identical phone number throughout the affidavit.

- In March 2013, undercover officers of the Minnesota State Patrol Vehicle Crimes Unit witnessed defendant purchase a Chrysler Sebring convertible at the Manheim Northstar Auction. Sgt. DeJong found the same vehicle advertised on Craigslist with a contact phone number of 612-414-XXXX.

All of this information provided a substantial factual basis for concluding that defendant purchased and sold vehicles without proper authorization, and without paying taxes and fees on the vehicle sales.

Second, the information provided in the supporting affidavit established that defendant posted advertisements for these vehicles from XXXX Bolland Trail, Inver Grove Heights, MN. Specifically, officers obtained through administrative subpoenas the IP addresses associated with 2,000 vehicle sale advertisements posted on Craigslist. Using phone numbers, IP addresses, and email addresses, officers discovered that defendant was posting numerous vehicle advertisements on Craigslist from XXXX Bolland Trail in Inver Grove Heights, MN. Accordingly, the Court finds that the supporting affidavit established a nexus between the alleged criminal activity and the Inver Grove Heights residence, and provided a fair probability that evidence of criminal activity would be found inside.

Third, the affidavit set forth how Sgt. DeJong acquired the information alleged in the warrant affidavit. Sgt. DeJong personally met with the two complainants who had originally contacted the Woodbury Police Department concerning defendant's illegal vehicle sales. The complainants submitted documents showing that defendant was purchasing vehicles from auctions and advertising them on Craigslist and other websites. The documents showed that defendant had advertised nearly 100 vehicles from August 2011 to December 2012. In addition, Sgt. DeJong met with the private

citizen who purchased the 2002 Mitsubishi Galant from defendant on behalf of Gary's Auto Sales of Eau Claire, WI. Sgt. DeJong then contacted an investigator with the Wisconsin Department of Transportation, who told him that defendant did not hold a wholesale buyers license for Gary's Auto Sales of Eau Clair, WI, and that Gary's Auto Sales possessed no vehicles and was up for sale. After reviewing business records for the Manheim Northstar Auction, Sgt. DeJong confirmed that the Mitsubishi Galant sold to the complainant in 2012 had previously been purchased by defendant at the Manheim Northstar Auction. He also discovered that since January 2013, defendant had bought more than 35 vehicles at the auction.

Further, on March 7, 2013, undercover officers personally observed defendant purchase vehicles at the Manheim Northstar Auction, including a Chrysler Sebring, which they later found advertised on Craigslist with defendant's phone number. Finally, officers traced the source of the Craigslist advertisements to defendant's Inver Grove Heights residence using defendant's IP address and phone number.

In summary, the affidavit is not conclusory. To the contrary, it factually described the steps taken by Sgt. DeJong in investigating defendant, including the sources of information he relied upon, the dates he acquired such information, and a description of the information he obtained. For all of these reasons, the Court finds that Judge Wentzell had a substantial basis for concluding that probable cause existed, and therefore the evidence obtained as a result of the search of XXXX Bolland Trail, Inver Grove Heights, MN should not be suppressed.[2]

---

[2]  Because the search warrant was supported by probable cause, this Court need not determine whether the Leon good-faith exception should apply. The Court notes,

however, that even if the warrant lacked probable cause, officers' reliance on the warrant would have been reasonable under Leon.

> Under the [Leon] good-faith exception, evidence seized pursuant to a search warrant that lacked probable cause is admissible if the executing officer's good-faith reliance on the warrant is objectively reasonable. The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization.

United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008) (citing Proell, 485 F.3d at 430-31 (alterations in original) (internal quotations omitted).

In Leon, the Supreme Court explained that "'searches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" 468 U.S. at 922 (citations omitted). However, the Court noted that there are certain instances when "the purpose of the exclusionary rule—deterring police misconduct—will not be served by suppressing illegally seized evidence." United States v. Martin, 833 F.2d 752, 755 (8th Cir. 1987); Leon, 468 U.S. at 922-23.

> Leon identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

Perry, 531 F.3d at 665 (quoting Proell, 485 F.3d at 431).  With respect to the third exception, the Eighth Circuit explained: "'Entirely unreasonable' is not a phrase often used by the Supreme Court, and we find nothing in Leon or in the Court's subsequent opinions that would justify our dilution of the Court's particularly strong choice of words." Proell, 485 F.3d at 432 (quoting Carpenter, 341 F.3d at 670).

In this case, defendant has not alleged—and the Court does not find—that the affidavit contained a false statement, or that Judge Wentzell wholly abandoned his judicial role in issuing the search warrant.  As to the third and fourth exceptions, defendant argued that an experienced law enforcement officer would have known on

## III.    RECOMMENDATION

For the reasons set forth above, IT IS HEREBY RECOMMENDED that:

Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure

[Docket No. 24] be **DENIED**.

Dated: October 14, 2014

*s/Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **October 28, 2014**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court and is therefore not appealable directly to the Circuit Court of Appeals.

---

the face of the warrant that it was deficient. Def.'s Mem., p. 6. However, as set forth above, the affidavit provides substantial information concerning Sgt. DeJong's investigation and sources of information, not merely conclusory allegations of criminal conduct, and tied the facts alleged to XXXX Bolland Trail, Inver Grove Heights, MN. Therefore, based on all the facts and circumstances of this case, it was not "entirely unreasonable" for Sgt. DeJong to rely on Judge Wentzell's issuance of the search warrant.